## WESLEY MISNER *et al.*

### *v.*

## J. MURRAY BULLARD.

1. CONSTITUTION — *valid laws under*. A law authorizing the levy of a town tax to raise a fund to procure volunteers and substitutes for the United States army, to exempt the town from a draft, is constitutional. The case of *Taylor* v. *Thompson*, 42 Ill. 9, approved.

2. TOWNS — *what is a town fund*. *Held*, that a tax raised for such an object is for a town purpose, and might be audited as such. It is for a corporate purpose when specially authorized by law. But, in the absence of such authority, such a tax is not warranted. The case of *Drake* v. *Phillips*, 40 Ill. 388, considered and approved.

3. BOUNTY FUND — *law authorizing.* The act of the 18th of January, 1865, authorizes the boards of supervisors in the several counties therein named, to levy at their regular sessions, a special tax not exceeding three per cent, as they deem necessary, to discharge any part or all indebtedness then incurred, or which they might afterward incur, on account of any appropriation which had been or might be made to pay bounties to volunteers, substitutes or drafted men, who had been or might be mustered into the service.

4. The second section confers the power to prescribe the time when such special tax shall be collected. The third confers authority to levy and cause to be collected such special tax, on any town or towns, as may be necessary to pay bounties to relieve them of indebtedness for bounties paid by the town or individuals to volunteers who had or might enlist and be credited to the town.

5. The fifth section declares, that before such tax shall be levied to pay indebtedness named in the third section, persons holding such indetedness are required to submit their claims to the town auditors for liquidation and allowance, the town clerk shall, when allowed, certify the same to the county clerk, stating the action of the board of auditors, which is required to be filed within four days from the time the auditors make their decision. *Held,* that the power conferred by this act was ample to authorize the board of supervisors of Kendall county to levy this tax, and when levied, it is for a corporate purpose. The Constitution authorizes a corporate tax to be levied, but has not specified what are corporate purposes, leaving that to be otherwise determined.

6. The act authorizes the board of supervisors to levy the tax, but requires as preliminary thereto, that the town auditors must first pass upon the claims for money advanced to procure volunteers. Until such claim has been so acted upon the board have no power to make the levy.

7. TAX — *levied for town purposes.* Where the board of town auditors have acted upon and allowed such claims, and they were properly certified to the county clerk, the board of supervisors were required to levy the tax on the property in the town, and it was valid without reference to the election to vote the tax, it not having been required by the statute.

8. INJUNCTION — *dissolution of — damages.* On the dissolution of an injunction, where a suggestion of damages shall be filed, the statute requires the court to assess the damages, — *held,* that it is not error to allow a counsel fee in such assessment.

WRIT OF ERROR to the Circuit Court of Kendall county; the Hon. MADISON E. HOLLISTER, Judge, presiding.

This was a suit in chancery in the Circuit Court of Kendall county, brought by Wesley Misner, De Marquis Misner, John Boyd, Jacob Austin, Fletcher Misner, James Evans, Aaron Petty, Kingsley Martin, Henry E. Miers, Elisha Taylor,

Samuel Jackson, William Evans, Eben Waters, Lewis Grover, William Whitfield and Stephen Drake, against J. Murray Bullard, town collector of the town of Fox, to enjoin the collection of a bounty tax levied on the taxable property of the town.

A summons was issued on the 23d of January, 1866, which was afterward returned served. A temporary injunction was also granted restraining the collection of the tax until the further order of the court. Bullard answered the bill, and a replication was filed to his answer.

The cause came on to a hearing at the May Special Term, 1866, and the court rendered a decree dissolving the injunction. And upon suggestion of damages being filed by defendant, after hearing evidence, the court assessed the same at $100 for liability incurred for solicitor's fees. Complainants prosecuted this writ of error to reverse the decree of the court below.

The facts of the case sufficiently appear in the opinion of the court.

Mr. T. Lyle Dickey, for the plaintiffs in error.

Mr. R. G. Montony, for the defendant in error.

Mr. Chief Justice Walker delivered the opinion of the Court:

This was a bill filed by a number of tax payers of the town of Fox, in the county of Kendall, to restrain the collection of a special town tax, levied for the purpose of paying bounties to volunteers to fill the quota of the town, and thereby escape the draft. It appears from the allegations of the bill, that on the 23d of January, 1865, the town clerk gave notice that a special town meeting would be held on the 3d day of the ensuing February, " to vote for or against a loan, to be levied by a tax, to procure bounty for volunteers, to fill our quota under the President's last call for three hundred thousand men." At

the time specified, the polls were opened to vote, "for or against a tax, to be levied on the town, for the purpose of raising a bounty, to be paid to men who enlist to fill the quota of the town, under the President's last call for three hundred thousand men." The election resulted in fifty-eight votes in favor of, and four against the tax.

On the 24th day of January, 1865 (the day after the notice was given), divers citizens of the town signed a subscription paper, by which they agreed to pay the sums of money set opposite their several names, as a loan to the town, to be paid to volunteers, to fill the quota of the town under the call for men.

That some time subsequent to the 16th of February, 1865, the board of auditors certified, that they had examined the subscription or account of loans, and found it correct, and ordered that a tax of three per cent be assessed upon all of the taxable property of the town for the year 1865, to pay the debt, which was filed in the office of the town clerk. The entries in the town record recite, as a part of the auditing of the town, that there is due to individuals of the town $7,900, loaned and paid out as a bounty to volunteers in January, 1865, and that the auditors voted to levy a tax of three per cent on all the taxable property in the town toward raising the amount.

On the 7th of September, 1865, the town clerk filed with the county clerk a certificate, that the auditors had voted to levy the tax, and the board of supervisors of the county at their September meeting, ordered the county clerk to extend the same on the collector's book, which he did. A warrant was issued embracing this tax, in a separate column, which was placed in the hands of J. Murray Bullard, the town collector, who was about to proceed to its collection when this bill was filed.

It is, among other things, alleged in the bill, that none of complainants were liable to a draft, most of them being over forty-five years of age at the time the vote was taken. That two of them had served in the war of 1812, and were honorably discharged. That one of them had enlisted in 1862, and had

served three years in the army; had accompanied Sherman in his march to the sea; had been twice wounded in battle, and honorably discharged. An answer was filed which admitted the allegations of the bill; and alleges, that the money thus borrowed by the town, had been faithfully applied to the payment of bounties to volunteers.

The cause came on for a hearing in the court below, at the May Term, 1866, when the court on motion of defendant dissolved the injunction. The defendant thereupon filed suggestions of damages sustained by reason of the wrongful suing out of the injunction.

After hearing evidence, the court found, that he had sustained damage to the amount of $100 paid, or to be paid, as a solicitor's fee, in defending the suit; and ordered a decree for its payment. The case is brought to this court to reverse the decree of the court below.

It is urged, as ground of reversal, that this law is unconstitutional, and therefore unauthorized and void, and that its collection should have been enjoined. In the case of *Taylor* v. *Thompson*, 42 Ill. 9, this question was presented, and after full argument and mature consideration, a similar law was held to be constitutional. Other cases have since arisen, and the question has been regarded as settled. And in this case, sufficient reasons have not been presented to induce us to depart from the decisions then announced.

It is also objected, that the town auditors had no authority to audit and allow this claim against the town. The first reason urged is, that it was not for a town purpose. In the case of *Taylor* v. *Thompson*, it was held, that a tax to raise a fund to pay bounties for volunteers, to avoid the draft by a county, was a tax for a corporate purpose, when specially authorized by law. The same doctrine was announced in the case of *Briscoe* v. *Allison, ante*, p. 291. In the case of *Drake* v. *Phillips*, 40 Ill. 388, it was held, that in the absence of express authority from the legislature, a town had no power to levy a tax to refund money to persons who had paid bounties to procure substitutes to avoid the draft.

It was there held, that such a tax was not for a town purpose, and was unauthorized. If in this case such a tax was levied, it was unwarranted. But, it is claimed, that this tax is authorized by the act of the 18th of January 1865. (See Private Laws, p. 101.) This law names, and is applicable in its provisions, to Kendall and other counties. Its provisions are broad and comprehensive, and were evidently designed to embrace a large class of cases, and to confer large powers on the boards of supervisors of the counties embraced in its provisions. The first section declares, that the board of supervisors of the several counties named in the act, may, at any regular or special session, levy such special tax, not exceeding three per cent annually, on the taxable property of their county, as may, in their judgment, be necessary to discharge any part or all indebtedness then incurred, or which by the board might thereafter be incurred, on account of any appropriation which had been or might be made for the payment of bounties to volunteers or drafted men, who had been, or might be, mustered into the service.

The second section confers the power upon the several boards of supervisors to prescribe the time when any such special tax shall be collected and paid. The third section confers the power upon such boards, in the counties named, to levy and cause to be collected such special tax upon the taxable property of such town or towns, as may be necessary to pay or discharge any indebtedness incurred by such town or person on account of local bounties paid or agreed to be paid by such town, or towns, or persons, to volunteers who have or might thereafter enlist and be mustered into the service and be credited to the town. The fourth section relates only to the mode of collecting the tax. The fifth section declares, that before such tax shall be levied to pay indebtedness to any person or persons as mentioned in the third section, such person or persons are required to submit to the board of town auditors their claims for liquidation and allowance, and a certificate of the clerk of the town is required to be filed with the county clerk, stating the action of the board of auditors in respect of their

approving or disapproving such claims, which is required to be filed within five days from the time the auditors shall make their decision. These seem to be the only provisions of this act which are applicable to the case under consideration.

The power here conferred was ample to authorize the board of supervisors of Kendall county, to levy this tax, if the prerequisite steps were observed. The Constitution not prohibiting the legislature from authorizing the levy of such a tax, and as, when levied, it became a tax for corporate purposes, the only question is, whether the legislature exceeded their power in prescribing the mode of levying the tax, and whether this tax was levied in the manner prescribed.

The Constitution authorizes the levy of a tax for corporate purposes, but fails to indicate the body, or persons who shall make the levy; that is left to be determined by the general assembly. In this case in the exercise of the power, they have authorized the board of supervisors ultimately to make the levy. But as a preparatory step to authorize them to act, the claim for money advanced to procure volunteers, must be presented to, and audited by the board of town auditors.

Until the claim has been presented, and allowed in the manner prescribed, they have no power to order the levy of the tax, and when the allowance is made by the town auditors, the fact must be certified as required, to the board of supervisors.

In this case the auditors acted, and allowed the claims. They were certified and filed with the county clerk as required by the law, and this not only authorized, but it required, the board of supervisors to make the levy, as they did. The act does not require that there should be a vote of the citizens of the town for or against the tax, or the rate which should be imposed. The holding of the election was simply useless and unnecessary.

We do not perceive any want of power to make the levy, or any irregularity in exercising the power.

It was objected, that the court erred in decreeing the payment of $100, by complainants to defendant, as damages for the wrongful suing out of the injunction. This was done on suggestions filed in pursuance of the statute. But it is urged, that

attorney's fees cannot be allowed. In the case of *Ryan* v. *Anderson*, 25 Ill. 372, the court held, that costs, including counsel fees, might be allowed as damages, on the dissolution of an injunction.

It is true, that in that case the suit was on an injunction bond, but the principle is the same, and that case must govern this question.

We perceive no error in this record for which the decree of the court below should be reversed, and therefore it must be affirmed.

*Decree affirmed.*