# HENRY S. OLDS ET AL.
## V.
# ABNER C. LOOMIS.

1. SHERIFF—ALLOWANCE FOR TAKING POSSESSION OF AND REMOVING PROPERTY LEVIED UPON. Under the statute a sheriff is entitled in addition to his salary to an allowance for the necessary expenses of removing and holding property levied upon by writ of attachment or execution.

2. ALLOWANCES TO BE ASCERTAINED BY THE COURT.—The clerk of a court is empowered to tax only specific fees, the amount of which is fixed by the statute; and where the amount, as in allowance for expenses, is subject to be varied with the circumstances of each case, involving the exercise of judicial discretion and judgment, it must first be ascertained by the court, and then it becomes the duty of the clerk to tax the sum ascertained as costs.

3. EXCESSIVE ALLOWANCE.—In this case the court is of opinion that many of the charges were excessive, and should not have been allowed. The sheriff

Olds v. Loomis.

is entitled to allowance only for *necessary* actual expenses, and upon this basis, an item paid for storage should have been allowed upon the basis of the actual rental value, and not measured by the customary rates of charges made by warehousemen.     So, too, an allowance of five dollars per day for custodian, is exorbitant.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.· Opinion filed March 7, 1882.

Appellants commenced a suit in attachment against appellee in the Superior Court of Cook county, Oct. 19, 1880, for an indebtedness of $10,581.   The writ was levied on the same day by John Hoffman, then sheriff on a stock of lumber and materials owned and being used by Loomis in the manufacture of wagons and carriages, a portion being .in a building at the corner of Randolph and Ann streets in the city of Chicago, and a portion on an improved lot, about 150 feet distant from the building.   The property attached was held by Hoffman, as sheriff, until the 6th day of December following, when he turned it over to O. L. Mann, his successor in office.   From thence until about June 1, 1881, Mann held the property by virtue of said attachment writ. On that day the issues in the attachment proceeding were tried by the court, and found for the defendant, and the writ was quashed, with judgment for costs against the plaintiff, whereupon the property attached was returned to the defendant.

The sheriff meanwhile had paid certain costs, and incurred liabilities in taking possession of, holding and removing the property, for which he requested the plaintiffs to reimburse him, and upon their refusing he applied to the court by motion to ascertain and allow, and to direct the clerk to tax, the same as costs.

The itemized bill of the alleged costs and expenses is as follows:

OLDS ET AL.  
    v.           In the Superior Court.—Attachment.  
ABNER C. LOOMIS.

Expenses incurred under John Hoffman, sheriff, whose term of office expired December 5th, 1880:

CUSTODIAN FEES.

Fred Stichter, from October 12th, to December 6th,

| | |
|---|---:|
| 1880, 55 days and nights @ 5.00..............$ | 275.00 |
| John D. Casey, from October, to November 5th, 1880, | |
| 34 days and 33 nights,....................... | 172.50 |
| Charles Colson, machinist, taking down machinery, | 50.00 |
| John Marwedel, teamster, taking care of horses,.... | 20.00 |
| Cash paid for oats, ......................... | 5.64 |
| "    "   "   coal,........................... | 9.00 |
| "    " laborers, tying up spokes, shafts, etc., in | |
| bundles, prior to moving,.................... | 54.00 |
| | $586.14 |

| | | |
|---|---|---:|
| 1881 | CREDITS. | |
| Oct. 21. | Rec'd from E. F. Allen, plff's att'y.........$ | 75.00 |
| Nov. 3. | Rec'd from H. Miller, in Miller v. Loomis | 50.00 |
| " 17. | "    " C. W. Fillmore, ag't of Olds.. | 200.00 |
| Dec. 3. | Received from same, ag't of Olds.......... | 150.00 |
| | $ | 475.00 |
| | $ | 111.14 |
| Balance due John Hoffman, Sheriff.............. | | 111.14 |
| Due Philo Carpenter, for rent of Ann street lumber | | |
| yard from Oct. 12, to Dec. 5, 1880........... | | 35.00 |
| (Loomis paid to Nov. 1880)....................$ | | 146.14 |

Same ⎞
  v.   ⎬
Same ⎠

Expenses incurred by O. L. Mann, Sheriff:

CUSTODIAN FEES.

| | |
|---|---:|
| Fred Stichter, Dec. 6, 1880, to Jan. 5, 1881, 31 days | |
| and nights @ $5.00........................$ | 155.00 |
| Cash paid laborers, removing property to store house, | |
| shown by pay-rolls, Nos. 1, 2, 3 and 4......... | 204.86 |
| Cash paid for coal............................ | 8.50 |
| "    " S. P. Dewey, for checking inventory and | |
| superintending removal of property.......... | 87.00 |
| Cash paid S. B. Shever, for hauling goods to ware | |
| house ...................................... | 135.00 |
| Cash paid Charles Colson, for putting up belt to work. | |

Olds v. Loomis,

| | |
|---|---:|
| elevator | 12.00 |
| Cash paid the Wolfinger Organ Comp'y for power to run elevator | 25.00 |
| Frank Draffen, custodian from Jan. 6, to March 26, 1881, 80 days @ $2.50 | 200.00 |
| Philo Carpenter, for rent of Ann street lumber yard, from Dec. 6, 1880 to May 1, 1881, | 145.00 |
| Same for month of May | 40.00 |
| Cash paid for insurance | 32.25 |
| Cash paid Hacket and Van Northwick, night-watching lumber | 20.00 |
| Due same for same to Jan. 1 | 30.00 |
| Keeping horse from Dec. 6, 1880, to June 1, 1881, 6 months, @ $5 | 30.00 |
| Insurance since 15th May | 20.00 |
| John J. Brown's bill for storage | $1,925.00 |
| Interest on cash advanced | 7.50 |
| | $3,077.11 |

Dec. 23, 1880.   Credit by cash rec'd on account from
C. W. Fillmore, ag't for pl'ff.............50.00
April 30, 1881.   Of Traders' Insurance Co., on ad-
justment of loss by fire  .............123.65    173.65

Amount due Sheriff Mann.......................$2,903.46
Amount due John Hoffman........................ 146.14

$3,049.60

All the foregoing items were allowed by the court, except that of $185 to Philo Carpenter for rent of lumber yard, and $7.30 for interest.

It appears from the evidence that the sheriff placed custodians and watchmen in charge of the property, at or near the time of the levy, who remained in possession until about January 6th, 1881, when he removed the property in the building to the carriage repository of John J. Brown, at Nos. 400 and 402 W. Madison street, about two blocks distant. The property in the lumber yard and sheds was not removed. The removal of the property from the Loomis building to Brown's place was completed Jan. 6, 1881.

Witnesses were sworn on both sides as to the various charges in the bill, and the court found that the necessary costs and expenses of the sheriff were $3,345.75, and directed the clerk to tax the same accordingly.

Appellants filed their motion for a re-taxation, which being denied, they appealed from the finding and judgment, to this court.

Mr. GEO. W. SMITH and Mr. JOHN M. GARTSIDE, for appellants; that the expense of caring for the property must be borne by the sheriff, as a part of the burdens of his office, cited Crofeet v. Brandt, 46 How. Pr. 481; Siebert v. Logan Co. 63 Ill. 156; Union County v. Patton, 63 Ill. 459; Hughes v. The People, 82 Ill. 78; Smith v. McLaughlin, 77 Ill. 596; Cullom v. Dolloff, 94 Ill. 330; City of Joliet v. Fahey, 1 Bradwell, 433.

The clerk of the court must tax these costs: Rev. Stat. Chap. 53, § 19; Rev. Stat. Chap. 33, §§ 25, 26; Gregg v. Crabtree, 33 Ill. 275.

As to what costs and charges are properly taxable in this action: Crofeet v. Brandt, 46 How. Pr. 481; Jones v. Thomas, 14 Ind. 474; Gardner v. Brown, 22 Ind. 447; Camp v. Garr, 6 Wend. 536; Cutter v. Howe, 122 Mass. 514; Buck v. City of Lockport, 43 How. Pr. 283; Demorest v. Torrey, 9 Abb. Pr. 95; Lord v. Richmond, How. Pr. 173.

WILSON, P. J. The two principal questions arising on the present record are, first, as to right of the sheriff of Cook county to an allowance for disbursements in executing a writ of attachment in addition to his poundage or commissions, and other specific fees prescribed by the statute; and if he is so entitled, then secondly, whether his claim in the present case was for services and expenses actually necessary, and were reasonable in amount, and also the further incidental question, by whom are such costs and expenses to be allowed and taxed.

At common law the sheriff was bound to perform his duties gratuitously, and if he was entitled to make any charge for his services, he must show his title under some act of parliament. Bac. Ab. Tit. "Fees;" 2 T. R. 158; 18 Eng. Com. L. R. 87.

Olds v. Loomis.

The constitution of 1870 (Art. 19, Sec. 9), provides that the sheriff of Cook county shall receive as his only compensation for services, a salary to be fixed by law. By the act of 1872, concerning fees and salaries, (R. S. Chap. 53), Cook county was assigned to the third class, and the sheriff's salary fixed at $6,000 per year as his only compensation, to be paid out of the fees of his office. He is required to make semi-annual returns of the fees and emoluments of his office to the county commissioners. Section 19 enumerates specific services, and the fees prescribed therefor, which are to be taxed as sheriff's costs, and also contains the following provisions: " For taking possession of and removing property levied on, the actual costs of such possession and removal." By the act of 1874, this provision was amended so as to read, " the necessary actual costs."

The last clause of section 19 is as follows: " In addition to the above fees, there shall be allowed to the several sheriffs in this State a commission of three per cent. on all sales of execution, etc., * * * and no other fees or compensation whatever shall be allowed on any execution, except the necessary expenses for keeping personal property to be ascertained and allowed by the court out of which the same shall issue. "

From these various provisions it will be seen, first, that the fees of the sheriff of Cook county are not his individual perquisites, but are provided for by way of indemnity to the county, for the expenses of the sheriff's office, including his salary, and constitute a part of the public revenues of the county. The sheriff has no direct personal interest in them.

Secondly, that express provision is made for an allowance of the necessary actual costs of taking possession of and removing property levied on. The provision for such allowance is no less plain than is the provision for a taxable fee of fifty cents for serving an execution or writ of attachment, or for a commission of three per cent. on sales, the only difference being that in one case the amount of compensation is fixed, and in the other is necessarily left for ascertainment. And such possession must be held to include, not merely the original taking, but also the keeping of the property to answer the exigency of the writ.

It is claimed by appellant that as it is the duty of the sheriff to take and safely keep property levied on by him, the labor and expense incident thereto must be borne by him without other compensation than his salary; and it is argued that though this might operate harshly in a given case, the loss, if any, would be made up in another case, and the sheriff must take the good with the bad; that this was a risk he assumed when he took the office.   And such was the ruling in the leading case of Crofeet v. Brandt, in an elaborate opinion by Folger J., 47 How. Pr. P. 263; so in Slater v. Haines, 7 M. & W. 413, the sheriff was allowed his poundage, and such fees as were prescribed by the table of fees framed under certain statutes, and although he was put to extra trouble and expense, he was refused more.   And in Lane v. Sewell, 1 Chit. R. 175, it is laid down that where the service falls within the general duty of the sheriff, he is not entitled to any extra compensation.

It is a sufficient answer to these, and many like cases we have looked into, that the decisions were made in the absence of any statutory provision, and were based upon the rule of the common law.   Moreover, as under the statute, the sheriff of Cook county has no right to any of the fees collected by him, he could not reimburse himself for losses sustained in one case, by the fees collected in another case, and so the application of such a rule to him might work a great hardship.

It is further insisted that the statute authorizing the making of an allowance, only applies to the case of property taken on an execution, and is not applicable to writs of attachment.   It is true, the last clause of section 19 above quoted, applies to executions only.   But the authority for making an allowance in cases of property seized on writs of attachment does not depend upon that provision.   By the act of 1872, as amended by the law of 1874, it is provided: " For levying an execution or serving a writ of attachment, fifty cents, and five cents a mile each way.   For taking possession of or removing property levied on, the sheriff shall be allowed to tax the necessary actual costs of such possession or removal."   The natural and fair construction of these two clauses, standing together as they do, is that the words " levied on," are used in the sense

Olds v. Loomis.

of *taken* and refer as well to the taking on a writ of attachment, as to the taking on an execution. The need of an allowance is, at least, as great in the case of property attached, where it is liable to remain in possession of the sheriff for an indefinite period, awaiting the disposition of the attachment issues, as it is in the case of goods taken on an execution where they may be disposed of speedily.

Another objection urged is, that the court had no authority, in the first instance, to ascertain and allow the sheriff's charges, but that the clerk should have first taxed the same, and the court could only pass upon them on a motion to re-tax. It is the duty of the clerk to tax all specific fees, the amount of which is fixed by the statute, but he is invested with no judicial power to pass upon and determine allowances, the amounts of which vary with the circumstances of each case, and the determination of which involves the exercise of judicial discretion and judgment. Such allowances must first be ascertained by the court, and then it becomes the duty of the clerk to tax them as costs. The *words* of the statute are, "the sheriff shall be allowed to tax the necessary costs," etc.; but this must be intended to mean he shall be allowed to *charge* for such costs, and his charge shall be subject to the approval of the court.

Our conclusion on this branch of the case is, that allowances may be made to the sheriff, in a proper case, for the necessary actual costs of taking possession of, removing and keeping property taken on a writ of attachment, and that such allowances are to be, primarily, determined by the court.

Was the allowance made by the court proper?

Taken as a whole, the sheriff's bill of charges impresses us as being swollen and unreasonable. The large sum of $3,345 is charged for removing and keeping for six months or thereabouts, property, not of a perishable nature, of the presumable value of $10,500, the amount of the plaintiff's claim. So large a bill is calculated to challenge unfavorable comment at the outset. Had the attachment issue remained undisposed of for a year and a half, not a very unusual period, the entire stock would have been well-nigh exhausted, in satisfying the costs,

leaving little, if anything, for the attaching creditor. Such a result would be a reproach to the law, and could only be justified by the clearest necessity.

It may be, and perhaps is, true in respect to some of the items in the account, that there is no sufficient data by which we can test the correctness of the findings of the court below, and say they are manifestly contrary to the evidence. For example, the charges of $54 for tying up spokes and shafts in bundles prior to moving, and cash paid laborers, $204, depend upon the amount of time necessarily consumed, in respect to which the evidence is not very definite, and to some extent is conflicting. But as to the two principal items, the charge for rent, and for guarding the property, the finding of the court can not be upheld.

The charge of $1,950 for storing one-half the property at Brown's for five months and a half is out of all reason. Conceding it was necessary to remove the property from the place where it was attached, it was the duty of the sheriff to have made all reasonable efforts to find a place of storage at a reasonable price. Brown, or whoever else he might apply to, was required to take notice that the limit of the sheriff's authority was to pay a fair and reasonable sum for storing the property, and that he could not bind the plaintiffs, nor the owners of the property, by an agreement to pay more. It appears they made no definite bargain as to the amount of rental; but Brown admits that he sent a bill at the end of the first two months at $300 per month, fifty dollars a month less then he was allowed by the court. But if the sheriff had expressly agreed to pay $350, or any sum in excess of what was reasonably necessary to obtain a suitable place of storage, the agreement would have been as to such excess, void, as against the plaintiff in the attachment.

We shall not stop to analyze the testimony on this branch of the case. Most of the witnesses on the part of the sheriff, based their estimates of the value of the rental on the charges customary in public warehouses. Such warehouse charges constitute an improper standard by which to measure the sheriff's authority to charge for the storage of property taken by him on

Olds v. Loomis.

execution or attachment, and should not have been considered by the court in making the allowance for rental. The law imposes upon the sheriff the duty of safely keeping property levied on by him, and he can not relieve himself from responsibility in that behalf by requiring the plaintiff to pay for storage prices which might be proper in the case of goods stored in a public warehouse; for this would be, in effect, to compel the plaintiff to assume, at least in part, the sheriff's responsibility. The statute allows him to charge for the necessary actual expenses of taking and holding the property. To that extent he is entitled to indemnity, but no further. The testimony should therefore have been confined to the fair rental value of so much of the premises as was reasonably necessary.

We are also of opinion that the allowance of $850 and upwards, for custodians' fees was, under the proofs, largely in excess of what was proper. Aside from the fact that the property had been levied on upon other writs, which should have shared proportionately in the expenses of taking care of it, we think $400 or $500, was the utmost limit of the necessary cost of guarding the property. It did not need a person of skill to act as watchman; a common laborer was all that was reasonably necessary. It appears that for a considerable period, two custodians were employed at a charge of five dollars a day for each man. Such an expense seems to us extravagant. If, as was claimed, five dollars was the customary price paid in such case, it is a custom that should not be followed. Public officers in the execution of process necessitating the expenditure of money in employing assistants, or otherwise, must exercise a reasonable prudence and economy, such as is exercised by the average prudent man in the management of his private business, and when they fail to do so, courts should refuse to make an allowance by way of reimbursing them to any extent beyond their necessary actual outlays.

The judgment of the court below must be reversed and the cause remanded.

Reversed and remanded.